Case No. 20-2286

---

United States Court of Appeals for the Sixth Circuit

**GERALD BYRD**
*Plaintiff-Appellant*,

v.

**RANDALL HAAS, Warden; DAVID M. LEACH, Special Activities Coordinator; KENNETH MCKEE, Deputy Director; [UNKNOWN] UMEH**
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of Michigan

---

**APPELLANT'S REPLY BRIEF**

---

Jeffrey A. Crapko (P78487)
Amanda Rauh-Bieri (P83615)
150 West Jefferson Street, Ste. 2500
Detroit, Michigan 48226
(248) 267-3296
crapko@millercanfield.com
rauh-bieri@millercanfield.com
Pro Bono Counsel for Petitioner-Appellant

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................. ii

ARGUMENT ...................................................................................2

I.     None of Byrd's claims are mooted because Defendants have retired....................................................................................2

    A.    Byrd's claims against the Warden, Special Activities Director, and Deputy Director remain ongoing.........................2

    B.    Byrd's argument is not waived. ...............................................7

II.    Byrd's RLUIPA claims against Defendants Haas, Leach, and McKee should proceed to trial. ............................................9

III.    Byrd's Free Exercise Claims against Defendants Haas, Leach, and McKee Should Proceed. ...............................................11

    A.    Defendants violated Byrd's First Amendment Rights.............11

    B.    Defendants are not entitled to qualified immunity. ................15

IV.    Byrd's Fourteenth Amendment Equal Protection claims should proceed. ...................................................................16

    A.    Defendants violated Byrd's Equal Protection rights. .............16

    B.    Defendants are not entitled to qualified immunity on Byrd's equal-protection claims................................................21

V.    Byrd's Fourteenth Amendment Procedural Due Process claims against Defendant Haas should proceed. ...........................................21

    A.    Defendant Haas violated Byrd's due process rights................21

    B.    Defendant Haas is not entitled to qualified immunity............22

CONCLUSION AND RELIEF REQUESTED .....................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boswell v. Mayer*,
    169 F.3d 384 (6th Cir. 1999) ...............................................................13

*Cavin v. Michigan Dep't of Corr.*,
    927 F.3d 455 (6th Cir. 2019) ...............................................................10

*Citizens United v. Fed. Election Comm'n*,
    558 U.S. 310 (2010)..............................................................................13

*Cowherd v. Million*,
    380 F.3d 909 (6th Cir. 2004) .................................................................8

*Cruz v. Beto*,
    405 U.S. 319 (1972)........................................................................15, 21

*Davis v. Cox*,
    2020 WL 2192551 (6th Cir. Feb. 20, 2020) ........................................8

*Figel v. Overton*,
    121 F. App'x 642 (6th Cir. 2005) .......................................................12

*Flagner v. Wilkinson*,
    241 F.3d 475 (6th Cir. 2001) .........................................................11, 12

*Fox v. Washington*,
    949 F.3d 270 (6th Cir. 2020) ...........................................................9, 10

*Holt v. Hobbs*,
    574 U.S. 352 (2015)................................................................................9

*Hope v. Pelzer*,
    536 U.S. 730 (2002)........................................................................16, 23

*Karcher v. May*,
    484 U.S. 72 (1987)..................................................................................2

*Kentucky v. Graham*,
 473 U.S. 159 (1985)..............................................................................5

*Koger v. Mohr*,
 964 F.3d 532 (6th Cir. 2020) ........................................16, 17, 20, 21

*Maye v. Klee*,
 915 F.3d 1076 (6th Cir. 2019) .............................................16, 17, 20

*McDaniel v. Precythe*,
 897 F.3d 946 (8th Cir. 2018) ...........................................................4, 8

*McPherson v. Kelsey*,
 125 F.3d 989 (6th Cir. 1997) ...............................................................7

*Monell v. Dep't of Soc. Servs.*,
 436 U.S. 658 (1978)..............................................................................5

*Stoudemire v. Michigan Dep't of Corr.*,
 705 F.3d 560 (6th Cir. 2013) .............................................................16

*Taylor v. Riojas*,
 141 S. Ct. 52 (2020)............................................................................23

*Turner v. Safley*,
 482 U.S. 78 (1987)........................................................................11, 12

**Statutes**

18 U.S.C. § 1983 .............................................................................5, 19

42 U.S.C. § 2000cc .................................................................................19

**Court Rules**

E.D. Mich. Local R. 7.1(h) .....................................................................7

Fed. R. Civ. P. 25 ...................................................................1, 2, 7, 8, 9

Despite Defendants' insistence that Byrd's complaint amounts to a mere "policy violation," this case remains about Defendants' repeated, blatant, and substantive denial of Byrd's constitutional and statutory religious rights. Since 2016, Byrd has submitted unanswered requests for religious accommodation under MDOC policy—and for nearly five years, Defendant MDOC officials have ignored his requests. This is no mere policy violation. Byrd wasn't requesting an extra pillow for his cell or seeking permission for an extra pencil in the law library. He was seeking the basic right to practice his religion, a right guaranteed both by our Constitution and RLUIPA. By sitting on Byrd's properly submitted requests for years—and by refusing to even respond or consider his requested religious accommodation—Defendants have denied Byrd the religious protections to which he is entitled under RLUIPA and the Constitution. Although it is Defendants' view that they can use inaction and delay to launder constitutional violations, that is not the law.

None of Defendants' arguments on appeal have merit. Contrary to Defendants' claim, none of Byrd's official-capacity claims for injunctive relief are moot. Under the plain language of Federal Rule of Civil Procedure 25(d), public officials in official-capacity actions are "*automatically substituted*" where, like here, the violations remain ongoing. Likewise, there's no merit to Defendants' contention that Byrd's claims are somehow aimed solely at the individuals named in his

complaint instead of the MDOC positions they occupied as Warden, Special Activities Coordinator, and Deputy Director, and neither has Byrd waived this argument.

As for Byrd's RLUIPA claims, Defendants rely only on their erroneous argument that Byrd's claims are moot, and they do not respond to the merits of Byrd's argument. Defendants likewise fail to engage with the substance of Byrd's constitutional arguments on appeal, wrongly claiming that Byrd's *pro se* pleadings failed to raise those claims. But, for all the reasons Byrd explained in his opening brief and below, Byrd's constitutional claims should proceed to trial. Byrd respectfully requests that this Court reverse the grant of summary judgment to the Defendants, and remand for further proceedings.

## ARGUMENT

### I.    None of Byrd's claims are mooted because Defendants have retired.

#### A.    Byrd's claims against the Warden, Special Activities Director, and Deputy Director remain ongoing.

By its plain terms, Federal Rule of Civil Procedure 25(d) provides for "*automatic*[] substitution" in an official-capacity action when a named "public officer . . . resigns . . . while the action is pending." (emphasis added); *see Karcher v. May*, 484 U.S. 72, 83 (1987) ("The rules effectuating automatic substitution of public officers were specifically designed to prevent suits involving public officers from becoming moot due to personnel changes."). Byrd's official-capacity claims

against Defendants are not moot simply because Defendants have retired. Since 2015, Byrd has submitted repeated requests for Ifa group services and the religious items he requires to practice Ifa.  (*See* Appellant's Opening Br. at 9-16.)  Even though Haas, Leach, and McKee no longer occupy the positions of Warden, Special Activities Coordinator, and Deputy Director, Byrd *still* awaits a final determination of his claims.[1]  Put differently, Byrd's complained-of harm did not end with Defendants' retirements, he still lacks the necessary requested religious items, he is

---

[1] Although oddly absent from Defendants' brief, Byrd calls the Court's attention to recent action by MDOC on Byrd's requests for accommodation.  On April 21, 2021, Adrian Dirschell, the Acting/Special Activities Coordinator issued a memorandum finally responding to Byrd's attorney-submitted request July 22, 2019, request (which is not at issue in this lawsuit). The memo stated that the Deputy Director "has approved the religious name of Yoruba to be changed to Ifa/Yoruba/Orisha," and that the Deputy Director "has also approved that this religious group Ifa/Yoruba/Orisha be moved to attachment A of PD 05.03.150 A, as Groups recognized for religious services." The memo further stated that the "[Deputy Director] appreciates your patien[ce] in this request as this will be sent back to the CAC for recommendations on services and religious property." Since Byrd's objective from the start of this litigation has been to practice Ifa, MDOC's decision is a welcome and long-awaited development. But, while Byrd is encouraged by MDOC's actions, these proceedings are still in their infancy, and it remains to be seen whether Byrd's request for accommodation will be given the type of consideration that comports with constitutional and statutory requirements or whether it will continue to languish for years of inaction and delay. Importantly, despite Dirschell's April letter, nothing has actually happened. The policy has not been amended and group services are still not allowed.  There is similarly no movement on actually granting him permission to possess and use necessary religious items. And, of course, Byrd continues to pursue his individual-capacity claims for damages. Even though Defendants have not argued that MDOC's recent action on Byrd's request renders his official-capacity claims moot, Byrd nonetheless points out that these small steps alone do not moot his claims for injunctive relief.

still unable to practice group services, and therefore his claims are not moot. *See McDaniel v. Precythe*, 897 F.3d 946, 951 (8th Cir. 2018) (official-capacity suit not moot when successor "ha[d] not announced new policies or represented to this court that she will depart from the policies of her predecessor").

Nevertheless, Defendants argue that Byrd's claims are moot because his allegations "are not against the position these officials held, or against the agency policy, or agency wide action, but were specifically against the named individual Defendants for failing to act." (Appellees' Br. at 18-19.)  But Byrd's claims are without doubt targeted at the *public offices* occupied by each Defendant.  Byrd is of course not claiming that Haas, Leach, and McKee in their capacity as private citizens have violated his rights—the entire basis of his claim is that, as Warden, Special Activities Coordinator, and Deputy Director, each Defendant has failed to carry out his duties as a public officeholder in a manner that comports with constitutional and statutory requirements.  After all, public offices are not abstract concepts—they are occupied by real-life individuals.  Defendants' contrary argument is mistaken.

Likewise, there's no merit to Defendants' claim that Byrd "failed to properly allege official-capacity claims against individual Defendants" because "none of Byrd's allegations are truly official-capacity claims against positions that Haas or Leach previously held, or against agency policy." (Appellees' Br. at 20-21; citing

*Kentucky v. Graham*, 473 U.S. 159, 163 (1985).[2]) But Byrd's *pro se* complaint challenges the Defendants' failures to protect his constitutionally and statutorily guaranteed religious rights in their roles as Warden, Special Activities Coordinator, and Deputy Director. Those claims are certainly "official-capacity claims against positions that Haas or Leach previously held," and it's downright silly for Defendants to claim otherwise.

Finally, Defendants argue that Byrd has already gotten the relief he's asked for because Byrd's request has been "forwarded for consideration," and Byrd is aware the committee that considers these requests only meets twice a year. (Appellees' Br. at 22-23.) But Byrd's claim is that Defendants have violated his substantive statutory and constitutional rights for *nearly five years*, and simply forwarding his request doesn't address any of those claims.  And, Defendants never explain how simply forwarding the request for accommodation absolves them of any constitutional or statutory wrongdoing, especially when Byrd remains unable to

---

[2] Defendants quote *Kentucky v. Graham*, 473 U.S. 159, 163 (1985), which reads: "More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation . . . thus, in an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law." (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 693 (1978)). This citation is irrelevant because Byrd has not brought a *Monell* claim against MDOC.

practice his religion, and unable to even receive a decision on his requested accommodations.

Byrd's claims—as is evident from his *pro se* complaint—allege that, by ignoring his properly submitted requests under MDOC policy for years, Defendants Haas, Leach, and McKee—in their official capacities as Warden, Special Activities Coordinator, and Deputy Director—have deprived him of his rights under RLUIPA and the Constitution.[3] Defendants cannot, five years later,[4] simply shrug their shoulders and explain that "[n]othing surrounding new religious requests happens quickly," and brush off what is, at minimum, a genuine fact dispute as to whether sitting on those requests for five years denied Byrd his rights. (*See* Appellees' Br. at 23.) This Court should reject Defendants' argument that MDOC's glacial process moots Byrd's claims for injunctive relief.

---

[3] Defendants' repeated insistence that this is about a "policy failure" hovers somewhere between downright baffling and willfully misleading. Byrd's complaint is not—and has never been—just about the Defendants' failure to forward his request. That failure is, of course, *evidence* that Defendants have effected a years-long denial of Byrd's statutory and constitutional rights. But the failure to follow the policy is *not* the substance of Byrd's claims. The substance of Byrd's claims is the outright refusal to even consider a legitimate request for religious accommodation, the *de facto* perpetual denial of which left Byrd unable to practice his religion, or, practice his religion with makeshift religious articles and risk punishment for contraband. Defendants know this.

[4] Moreover, Defendants' position raises the question:  what period of *years* would be sufficient before a prisoner can seek redress for a complete failure to provide any due process?  If five years is not enough, would six suffice?  Ten?

## B.    Byrd's argument is not waived.

Further, there is no merit to the Defendants' claim that Byrd's argument here is waived.  (Appellees' Br. at 17.)  First, Defendants' mootness argument wasn't fleshed out until their motion for reconsideration, at which point Byrd was not permitted to respond under the local rules.[5]  In Defendants' motion for summary judgment, they simply mentioned in passing that Byrd's claimed are mooted by the retirements of Haas and Leach, but Defendants never explained how those retirements affect the ongoing constitutional violations Byrd alleged in his complaint or provided any authority for their assertion.  (*See* Motion for Summary Judgment, RE 80, PageID# 743; referencing retirement in a single sentence); *see e.g.*, *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (citation omitted)).    The magistrate judge's report and recommendation properly rejected Defendants' passing assertions, noting that Rule 25(d) automatically substitutes Defendants' successors.  (R&R, RE 98, PageID# 2610.)  Defendants did not object to the magistrate's report and recommendation on these grounds, waiving their right to further argue the issue to the district court *and* this court on appeal.  "When a party fails to object to a magistrate judge's report and

---

[5] *See* E.D. Mich. Local R. 7.1(h) ("No response to the motion [for reconsideration] and no oral argument are permitted unless the Court orders otherwise.").

recommendation, he waives further review of his claims by the district court and this Court on appeal[.]" *Davis v. Cox*, 2020 WL 2192551, at *1 (6th Cir. Feb. 20, 2020); *see also Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc) ("Generally, the failure to file specific objections to a magistrate's report constitutes a waiver of those objections") (citation omitted)). But Defendants raised mootness in their motion for reconsideration anyway, which the district court granted without regard to Rule 25 or this Court's guidance regarding the preservation of objections to reports and recommendations. And again, Byrd was expressly *not* permitted to respond, absent invitation by the district court. Rather ironically, it turns out that it is Defendants who have waived the mootness argument, not Byrd.

Regardless, the unambiguous text of Rule 25(d) makes it plain that, in an official-capacity action, substituting Haas and Leach for their successors happens *automatically*: "An action *does not abate* when a public officer who is a party in an official capacity … resigns … while an action is pending. The officer's name is *automatically substituted* as a party. Later proceedings should be in the substituted party's name, *but any misnomer not affecting the parties' substantial rights must be disregarded*. The court may order substitution at any time, but the absence of such an order does not affect the substitution." (emphasis added). The onus is on *Defendants*—not Byrd—to show that Defendants' successors did not intend to continue the complained-of violations. *See McDaniel*, 897 F.3d at 951 ("The rules

of civil procedure recognize that where a successor official "does not intend to pursue the policy of [her] predecessor which gave rise to the lawsuit," the successor may "seek to have the action dismissed as moot." (citing Fed. R. Civ. P. 25(d), advisory committee's note to 1961 amendment)).  Defendants provide no authority that contradicts the plain text of Rule 25(d)'s automatic substitution rule, and no authority stating that this automatic substitution can be waived.

Under the straightforward terms of Rule 25(d), a substitution under these circumstances is "automatic" and a mis-named official-capacity defendant "must be disregarded."  Byrd cannot waive something that happens "automatically" under the rules.  And he certainly cannot waive a response to a non-meritorious argument that Defendants failed to preserve in the first instance in their objections to the magistrate judge's report and recommendation, only to raise the issue on a motion for reconsideration for which Byrd was expressly not allowed a response.  There is no merit to Defendants' contention that Byrd has somehow waived something that is "automatic" under the federal rules.

## II.    Byrd's RLUIPA claims against Defendants Haas, Leach, and McKee should proceed to trial.

Byrd's RLUIPA claims against Defendants Haas, Leach, and McKee should proceed to trial.  RLUIPA provides "broad protection for religious liberty," *Holt v. Hobbs*, 574 U.S. 352, 357 (2015); *see Fox v. Washington*, 949 F.3d 270, 277 (6th Cir. 2020).  Under RLUIPA, Byrd "must demonstrate that he seeks to exercise

religion out of 'sincerely held religious belief'" and "that the government substantially burdened that religious exercise." *Cavin v. Michigan Dep't of Corr.*, 927 F.3d 455, 458 (6th Cir. 2019) (citation omitted). Then, it is the government's burden to "meet the daunting compelling-interest and least-restrictive means test." *Id.* (citation omitted).

As discussed in Byrd's opening brief, Byrd's commitment to Ifa is sincere, and Byrd has shown that Defendants Leach, Haas, and McKee have all substantially burdened his religious rights. (Appellant's Br. at 23-31.) Defendants, in response, do not contend that that Byrd's beliefs weren't sincerely held, and neither do they argue that they did *not* substantially burden Byrd's rights under RLUIPA's "broad protection for religious liberty." *Fox*, 949 F.3d at 277. And Defendants make no attempt to show that they've satisfied the "daunting" strict-scrutiny test to justify their burden. (Appellees' Br. at 15-25.) *See Cavin*, 927 F.3d at 458.

On appeal, however, Defendants' sole argument that the district court properly granted them summary disposition on Byrd's RLUIPA claims is Defendants' mootness argument. But, as just discussed, there's no merit to that argument, and Byrd's RLUIPA claims should proceed. *See supra* Part I.

 Rather than address the substance of Byrd's RLUIPA arguments, Defendants opt instead for a cheap shot at Byrd's religious history, continuing a regrettable line of attack apparently aimed at pointing out that Ifa is a non-traditional religion.

(Appellees' Br. at 5; observing that "Byrd explored numerous religions while confined with MDOC—Protestant, Native American Traditional Ways, Nation of Islam, and Buddhism"). But as Defendants know, lesser known religions are *also* entitled to First Amendment protections—as are their converts who, like Byrd, have demonstrated their sincerely held religious beliefs. It is not Defendants' role to pick and choose which religions are worthy of their respect and accommodation. Defendants do not challenge that Byrd is a sincere practitioner of Ifa. And they do not challenge that, since converting to Ifa in 2015, Byrd has never wavered in his faith, so it is hard to imagine why Defendants' believe his previous religious history is somehow pertinent to this lawsuit or appeal. Since there's no basis for Defendants' sole argument on mootness, and because Byrd has demonstrated that the district court was wrong to dispose of the RLUIPA claims, those claims should proceed to trial.

## III. Byrd's Free Exercise Claims against Defendants Haas, Leach, and McKee Should Proceed.

### A. Defendants violated Byrd's First Amendment Rights.

Byrd's First Amendment free-exercise claims against Defendants Haas, Leach, and McKee should proceed to trial. Under the four-factor test in *Turner v. Safley*, 482 U.S. 78, 84 (1987), Defendants fail the first factor—they cannot show that their refusal to consider Byrd's properly submitted requests for accommodations bears a "rational connection" to a "legitimate government interest." *Id*.; *see Flagner*

*v. Wilkinson*, 241 F.3d 475, 484 (6th Cir. 2001) (citation omitted). Neither, as Byrd explained in his opening brief, do any of the remaining three *Turner* factors favor Defendants. (*See* Appellant's Br. at 40-42.)

Defendants, however, do not address Byrd's arguments under *Turner*. Defendants simply claim, without support, that the *Turner* test does not apply to what Defendants call Byrd's "scarcely as-applied" challenge. (Appellees' Br. at 33.) But the *Turner* test *does* apply to as-applied challenges, and Defendants do not attempt to distinguish or even address the multiple cases cited by Byrd where this Court has applied *Turner* to as-applied challenges. (*See* Appellant's Br. at 38; citing *Flagner*, 241 F.3d at 484 n.5; *Figel v. Overton*, 121 F. App'x 642, 646 (6th Cir. 2005).) *Turner* is the appropriate test here, and Defendants make no argument on appeal as to why, under *Turner*, Byrd's First Amendment claims should not proceed to trial.

Further, Defendants' claim that Byrd has "scarcely" brought an as-applied First Amendment challenge, *see* Appellees' Brief at 33, is without basis. Defendants don't explain what they mean when they claim that Byrd "scarcely presented an as-applied claim," but Byrd's *pro se* pleadings are more than sufficient to raise that challenge. Byrd's *pro se* complaint alleges: "Defendant Haas did not provide a response or ensure, in any way, that Plaintiff was able to freely exercise his sincerely held religious beliefs[.]" (Am. Compl. RE 24, PageID# 106, ¶ 71; *see also id.* ¶ 72.)

Byrd alleged that Leach's "failure to forward Plaintiff's religious request to Defendant McKee effectively denied Plaintiff Group Religious Services and access to Personal Religious Property to freely exercise his sincerely held beliefs in violation of the First and Fourteenth Amendments[.]"[6] (*Id.* ¶ 75.) It's not clear why Defendants believe that Byrd's *pro se* pleadings "scarcely" raise an as-applied challenge—regardless, it's plain from Byrd's Amended Complaint that he has sufficiently raised these First Amendment claims, particularly in light of the liberal construction granted to *pro se* pleadings.[7] *See, e.g.*, *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) ("Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings.").

Defendants further contend that the district court properly determined "that Haas's failure to forward Byrd's request amounted to confusion or

---

[6] And as to Defendant McKee, Byrd alleged that he "failed or refused to respond to the religious request, effectively denying Plaintiff the right to freely exercise his sincerely held religious beliefs in violation of RLIUPA, First and Fourteenth Amendments[.]" (Am. Compl. RE 24, PageID# 108, ¶ 81.)

[7] Not only that, but the Supreme Court has been clear: "[T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge. The distinction is both instructive and necessary, for it goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010). Byrd does not—and has not at any point—sought to invalidate the whole MDOC policy. Byrd claims that Defendants have denied him his constitutional rights by ignoring his properly submitted requests for religious accommodation.

13

miscommunication, which did not violate the First Amendment." (Appellees' Br. at 33; citing Order, RE 109, PageID# 3062.) Particularly at the summary-judgment stage, where the court must take the facts in the light most favorably to Byrd, this conclusion is simply wrong. The MDOC policy is clear: The Warden (at the time, Defendant Haas) or his designee *must* "forward the request and any supporting documents to the CFA Special Activities Coordinator through the appropriate chain of command."[8] Byrd submitted numerous requests over the course of five years. Haas, despite his clear duties to attend to that request under the MDOC policy, let those requests languish for five years, and as a result, effected a denial of Byrd's rights under the Free Exercise Clause. There is simply no merit to Haas's claim that sitting on Byrd's straightforward request for *five years* was indisputably the result of "confusion."

As to Leach and McKee, the Special Activities Coordinator and the Deputy Director, Byrd has raised at least a fact dispute as to whether they also violated his First Amendment rights by also ignoring Byrd's requests for years. There's no dispute that Leach was fully aware that Byrd had repeatedly submitted requests for religious accommodations, and yet did nothing over the course of several years to ensure that Byrd's constitutional rights were protected. (*See* Appellant's Br. at 29;

_____

[8] The policy does not define the "appropriate chain of command." (*See* Response to Motion for Summary Judgment Ex. B, RE 87-3, PageID# 1284, 1288.)

Response to Motion for Summary Judgment Ex. J, RE 87-11, PageID# 2066-91.) As for McKee, as Deputy Director he had the ultimately authority to grant requests like Byrd's—but he too did nothing for years. (Response to Motion for Summary Judgment Ex. B, RE 87-3, PageID# 1284, 1288; Response to Motion for Summary Judgment Ex. Q, RE 87-18, PageID# 2218-19.) This Court, therefore, should reject Defendants' contention that the district court rightly dismissed the First Amendment claims against Leach and McKee.

At bottom, Byrd's First Amendment claims are not, as Defendants claim, about a "policy violation." (Appellees' Br. at 33.) Byrd has repeatedly sought religious accommodations as an Ifa practitioner—and sought those accommodations by filing proper requests under MDOC policy—for five years. This is a substantive denial of Byrd's First Amendment rights to practice Ifa; it is *not* a mere policy violation. Defendants cannot use the very thing that has denied Byrd his rights— their stubborn inaction—to disguise these constitutional violations.

**B.    Defendants are not entitled to qualified immunity.**

Defendants Haas, Leach, and McKee are not entitled to qualified immunity on Byrd's First Amendment claims. Defendants do not dispute that they knew that prisoners "do not lose their right to religious beliefs during incarceration"— incarceration merely limits but doesn't extinguish Byrd's religious rights. (*See* Appellees' Br. at 27; citing *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972).) But, even

though Defendants readily admit that Byrd's First Amendment rights are not extinguished by his incarceration, they nevertheless proceeded to ignore his properly submitted requests that MDOC respect those rights for *five years.*

In short, Defendants knowingly ran the risk that by blatantly ignoring Byrd's request, they were trampling on the First Amendment rights to which they *knew* he was entitled. A "reasonable official" would have known that perpetually ignoring a straightforward request for religious accommodation would run the risk of violating Byrd's clearly established free exercise rights. *See Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 568 (6th Cir. 2013); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances.").

## IV.    Byrd's Fourteenth Amendment Equal Protection claims should proceed.

### A.    Defendants violated Byrd's Equal Protection rights.

Byrd's equal-protection claims against Defendants Haas, Leach, and McKee should proceed to trial. This Court has plainly held that "classifications that … impinge upon the exercise of a fundamental right"—like the denial of constitutionally protected religious rights—are "presumptively invidious." *Koger v. Mohr*, 964 F.3d 532, 544 (6th Cir. 2020); *Maye v. Klee*, 915 F.3d 1076, 1086 (6th Cir. 2019). As Byrd explained in his opening brief, his circumstances are analogous to those of the prisoner in *Koger*, where prison officials allowed Muslims to fast, but

16

not Rastafarians. *See* 964 F.3d at 544. This Court held that that kind of "facially discriminatory distinction"—allowing one religion to fast but not another—violated the Equal Protection Clause. *Id.* at 545. The circumstances here are analogous: MDOC policy here allows other religions the same items Byrd seeks—a prayer mat, herbs, and a religious necklace—but Byrd is not allowed them as an Ifa practitioner. (Appellant's Br. at 47; Response to Motion for Summary Judgment Ex. B, RE 87-3, PageID# 1294-1300, 1321.) This is a "facially discriminatory distinction," and it therefore violates Byrd's rights under the Equal Protection Clause. *Id.*; *see also Maye v. Klee*, 915 F.3d 1076, 1086 (6th Cir. 2019) ("[A] facially discriminatory distinction between the Nation of Islam and Al-Islam sects would burden [the plaintiff's] fundamental rights to religious freedom under the First Amendment, which means an invidious purpose may be inferred.").

Defendants, however, never address or even mention *Koger*—a case directly on point. Instead of responding to Byrd's arguments, Defendants instead claim to "remind[]" the Court that, in their view, "Haas is accused of failure to consider or forward Byrd's request." (Appellees' Br. at 38; citing Pl.'s Am. Compl., RE 24, PageID# 106.) Defendants claim that "Byrd's briefing on the Fourteenth Amendment claims for Equal Protection and Due Process, *which again make it appear as if Byrd was officially denied a religious accommodation by [Defendants]—but he was not*." (Appellees' Br. at 38; emphasis added.) To be

17

clear:   the *only* reason Byrd has not been "officially denied a religious accommodation" is because Defendants have ignored his properly submitted requests for a period of years, depriving him of a determination regarding his religious items.  And all the while, Defendants continue to allow similar items to other religions, while depriving Byrd the right to practice his religion on the same grounds already extended to other prisoners of disparate religions.

What's more, there's no merit to Defendants' argument that Byrd's *pro se* complaint cannot support his equal-protection arguments on appeal.  Byrd's *pro se* complaint alleges that "Defendants Haas, Leach, [and] McKee . . . each personally participated in denying Plaintiff his rights to freely exercise his religious beliefs that Defendants afforded to similarly situated prisoners and religious groups[.]"  (Am. Compl.,  RE 24, PageID# 109, ¶ 84.)  And in another paragraph: "Plaintiff was not given the right to freely exercise his sincerely held religious beliefs that are given similarly situated prisoners in violation of the Fourteenth Amendment."  (*Id.* ¶ 98; *see also id.* ¶ 97.)  In other words, Byrd's complaint, particularly when liberally construed, raises *exactly* the claim his appointed counsel has briefed on appeal.

Further, Defendants argue that, at the district court, Byrd focused on "the requested religious items, the need for group services, and comparisons to other religions . . . but all of these discussions only become relevant if Byrd's request traveled through all the required steps for consideration, was denied, and then was

18

brought before the district court as a facial challenge to MDOC policy." (Appellees' Br. 38-39.)  This is the crux of the issue in this case: It is Defendants' position that they cannot violate the rights of their inmates as long as they perpetually ignore submitted religious requests.  By simply never granting due process, Defendants apparently believe they can circumvent religious accommodation required by RLUIPA and the First Amendment entirely.  In fact, Defendants squarely made the argument that there is no role for federal courts in guarding against constitutional violations before the district court:

> **The Court:**  But it strikes me as being, sort of, a hollow right to have this matter considered if the person receiving it does nothing with it. And it's, sort of, that right without a remedy kind of concept that if nothing happens, then why would the prison ever do anything with it because they wouldn't be obligated in any fashion to process these requests?

> **Mr. Koger:**  Well, Judge, I certainly understand where you're going. But I would say it's long established how prisons enforce their rules and the reasons why are best left to the prisons.  The courts don't really support inserting themselves on how that is to be done. … the executive and legislative branch of government are best suited to determine how the prison is to function.

(Transcript, RE 99, PageID# 2630-31).  But this is plainly incorrect.  Federal courts absolutely *do* have a role in adjudicating the violation of constitutional rights.  *See generally* 18 U.S.C. § 1983.  And this is even more clearly the case where, as here, Congress has specifically created a cause of action for prisoners facing a violation of their religious rights and freedoms.  *See generally* 42 U.S.C. § 2000cc *et seq*.

While prison officials are certainly accorded some deference in basic prison administration issues, such deference ends the moment that violation of substantive constitutional and statutorily guaranteed rights begin. Byrd's position is simple—if Defendants perpetually and deliberately ignore his properly submitted requests for religious accommodation for a period of five years (during which time he is wholly unable to practice his religion) until he is forced to file a lawsuit and litigate that lawsuit for four years (and counting), it has denied him his constitutional rights.

Defendants also argue that "Byrd incorrectly focuses on other religions who have religious accommodations for services or similar items . . . but again Byrd did not sue to facially challenge MDOC policy which restricts his religious items" and "other religious accommodations are irrelevant." (Appellees' Br at 40-41.) But it is Defendants who are incorrect. Byrd has alleged that MDOC policy—*as applied to him as an Ifa practitioner*—violates his rights by denying him the very same items that practitioners of other religions are afforded under the policy. That is a perfectly permissible claim, and indeed a logical one, under Byrd's circumstances. Defendants cite no case to support their argument that Byrd can only make this argument if he'd brought a facial challenge. To the contrary, neither plaintiff in *Koger* or *Maye* sought to invalidate the entire prison policy (a facial challenge), instead simply arguing that the policy had been unconstitutionally applied to them. *See Maye*, 915 F.3d at 1085 ("Maye alleges that Serafin's decision to prevent Maye

from participating in Eid while permitting other religious sects to participate in analogous religious events violated Maye's rights under the Fourteenth Amendment's Equal Protection Clause."); *Koger*, 964 F.3d at 544 (holding that the prison officials' "actions" denying the plaintiff's specific requests for accommodation, taken in the light most favorable to the plaintiff, "violated the Equal Protection Clause").

### B. Defendants are not entitled to qualified immunity on Byrd's equal-protection claims.

Byrd's equal-protection claims for damages against Defendants Haas, Leach, and McKee in their individual capacities should proceed to trial. Any reasonable official in Defendants' position should have known that denying Byrd similar items that are already permitted to practitioners of other faiths violated Byrd's rights under the Equal Protection Clause. *See Cruz*, 405 U.S. at 323 (denying a prisoner "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners" would amount to "palpable discrimination").

## V. Byrd's Fourteenth Amendment Procedural Due Process claims against Defendant Haas should proceed.

### A. Defendant Haas violated Byrd's due process rights.

Byrd's claim for injunctive relief against Defendant Haas in his official capacity as Warden should proceed to trial. To recap, the district court had initially denied summary disposition to Haas before erroneously reversing course on a motion for reconsideration and dismissing that claim on mootness grounds. On

21

appeal, Defendants repeat the argument that this claim is moot because Haas has since retired, and because Byrd's request has been forwarded.  (Appellees' Br. 43.) For the reasons discussed above, *see supra* Part I, that argument is misplaced and should be rejected.

### B.    Defendant Haas is not entitled to qualified immunity.

Defendant Haas is not entitled to qualified immunity, and Byrd's due-process claim for damages against Defendant Haas in his individual capacity should proceed to trial.[9]  Defendants simply repeat the district court's erroneous characterization of this claim by arguing that no case "indicated a warden's failure to process a request created an atypical and significant hardship."  (Appellees' Br. at 42; citing Order, RE 109, PageID# 3067.)

But as Byrd argued in his opening brief, this is the wrong way to characterize Byrd's due-process claim against Defendant Haas.  (*See* Appellant's Br. at 52.)  The question is not whether failure to forward a request violates clearly established law, but whether by blatantly ignoring a request asking for an accommodation to protect a well-established right—Byrd's protected liberty right to practice Ifa—Defendant Haas knowingly and intentionally ran the risk that his inaction would violate Byrd's

---

[9] As Defendants point out, Byrd's summary-of-the-argument section accidentally misstated this claim as "Byrd's official-capacity claim for monetary damages." (Appellees' Br. at 15; citing Appellant's Br. at 19.)  Byrd intended to write "individual-capacity claim for monetary damages," as is clear from the substantive section discussing that claim.

rights. To that end, any reasonable official in Haas's position should have known that his utter, years-long refusal to consider Byrd's request for religious accommodation pursuant to a mandatory MDOC policy would risk denying Byrd his First Amendment rights without the process of law. *Taylor v. Riojas*, 141 S. Ct. 52, 53-54 (2020) (noting that a general constitutional rule may apply to specific conduct in question); *Hope*, 536 U.S. at 740-41 ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances … Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding.").

## CONCLUSION AND RELIEF REQUESTED

For all these reasons, Plaintiff/Appellant Gerald Byrd respectfully requests that the Court reverse the judgment of the district court and remand this case for further proceedings.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, PLC

By:   /s/Jeffrey A. Crapko
      Jeffrey A. Crapko (P78487)
      Amanda Rauh-Bieri (P83615)
      150 W. Jefferson, Ste. 2500, Detroit, MI 48226
      (313) 963-6420
      crapko@millercanfield.com
      rauh-bieri@millercanfield.com
      *Pro Bono Counsel for Plaintiff-Appellant*

Dated: July 6, 2021

## CERTIFICATE OF COMPLIANCE

I hereby certify that this 5,673-word brief complies with the Court's type-volume limitations.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, PLC

By:   /s/Jeffrey A. Crapko
      Jeffrey A. Crapko (P78487)
      150 West Jefferson, Suite 2500
      Detroit, Michigan 48226
      crapko@millercanfield.com
      *Pro Bono Counsel for Plaintiff-Appellant*

Dated: July 6, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF filing participants.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, PLC

By:   /s/Jeffrey A. Crapko
      Jeffrey A. Crapko (P78487)
      150 West Jefferson, Suite 2500
      Detroit, Michigan 48226
      crapko@millercanfield.com
      *Pro Bono Counsel for Plaintiff-Appellant*

Dated: July 6, 2021

**ADDENDUM**

**Designation of Relevant District Court Documents**

| Record Entry No. | Description of Entry | Page ID |
|---|---|---|
| 24 | Amended Complaint | |
| 58 | Report and Recommendation, Dated 8/08/2018 | |
| 60 | Byrd's Objection to Report and Recommendation | |
| 63 | Omnibus Order, Dated 9/25/2018 | 620 |
| 66 | Order of Assignment of Counsel | |
| 80 | Defendants' Motion for Summary Judgment | 726, 728, 736-38 |
| 87 | Byrd's Response to Defendants' Motion for Summary Judgment | |
| 87-2 | Byrd's Response to Defendants' Motion for Summary Judgment | 1281 |
| 87-3 | Byrd's Response to Defendants' Motion for Summary Judgment | 1283-1327 |
| 87-4 | Byrd's Response to Defendants' Motion for Summary Judgment | 1344-57, 1370-79, 1382-83, 1388, 1396-98, 1403-04, 1407-28, 1431, 1438-39, 1459-60, 1464-66, 1471-73 |
| 87-5 | Byrd's Response to Defendants' Motion for Summary Judgment | 1478-79, 1481-82 |
| 87-6 | Byrd's Response to Defendants' Motion for Summary Judgment | 1577-78; 1594 1616-18, 1625-26, 1628-30, 1630-53 |
| 87-7 | Byrd's Response to Defendants' Motion for Summary Judgment | 1692 |
| 87-8 | Byrd's Response to Defendants' Motion for Summary Judgment | 1694-1704 |

| 87-9 | Byrd's Response to Defendants' Motion for Summary Judgment | 1757-59, 1761-62 |
|---|---|---|
| 87-10 | Byrd's Response to Defendants' Motion for Summary Judgment | 1870-71, 1880-81, 1884-87, 1913-16 |
| 87-11 | Byrd's Response to Defendants' Motion for Summary Judgment | 1982-83, 1996-2005, 2066-91 |
| 87-12 | Byrd's Response to Defendants' Motion for Summary Judgment | 2148-52 |
| 87-14 | Byrd's Response to Defendants' Motion for Summary Judgment | 2154, 2156-58 |
| 87-15 | Byrd's Response to Defendants' Motion for Summary Judgment | 2161-69 |
| 87-16 | Byrd's Response to Defendants' Motion for Summary Judgment | 2170-72 |
| 87-18 | Byrd's Response to Defendants' Motion for Summary Judgment | 2204-10, 2218-19 |
| 87-20 | Byrd's Response to Defendants' Motion for Summary Judgment | 2274-79 |
| 87-21 | Byrd's Response to Defendants' Motion for Summary Judgment | 2281-89 |
| 87-22 | Byrd's Response to Defendants' Motion for Summary Judgment | 2291-97 |
| 98 | Report and Recommendation, Dated 5/29/2020 | 2609 |
| 99 | Transcript of Hearing on Motions Held 5/28/2020 | 2630-31 |
| 101 | Defendants' Objections to Report and Recommendation | |
| 102 | Byrd's Objection to Report and Recommendation | |
| 103 | Defendants' Objections to Report and Recommendation | 2716 |
| 105 | Byrd's Response to Defendants' Objection to Report and Recommendation on Motion for Summary Judgment | |
| 106 | Byrd's Response To Defendants' Objection to Report and Recommendation on Plaintiff's Expert Witness | |

| 108 | Order Requiring Supplemental Briefing | |
| 109 | Omnibus Opinion and Order, Dated 10/19/2020 | 3061-62; 3064-65, 3067 |
| 111 | Defendants' Motion for Reconsideration re RE 109 Omnibus Opinion and Order | |
| 112 | Defendants' Supplemental Brief re RE 108 | |
| 113 | Byrd's Supplemental Brief re RE 108 | |
| 114 | Omnibus Opinion and Order, Dated 11/23/2020 | 3131 |
| 115 | Judgment, Dated 11/23/2020 | |
| 116 | Notice of Appeal | |